**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

CLARA MCDONALD,                                  )

    *Plaintiff,*                                  )

                                                 )

v.                                               )       Civil Action No. 2:26-cv-00031

CITY OF DEL RIO, TEXAS; VAL VERDE              )
COUNTY; DEL RIO INDEPENDENT SCHOOL              )
DISTRICT; OFFICER CAMERON WALLACE,              )
individually and in his official capacity;      )
OFFICER ANA BARRERA, individually and
in her official capacity; OFFICER RICK
GONZALES, individually and
in his official capacity; OFFICER LUPE
COSTILLA, individually and
in her official capacity;
PRINCIPAL CYNTHIA SALAS, individually
and in her official capacity; ASSISTANT
PRINCIPAL DeWITT, individually and in
her official capacity; SUPERINTENDENT
CARLOS RIOS, individually and in his
official capacity; TRUSTEE RAYMOND P.
MEZA, individually and in his official capacity;
TRUSTEE JOSHUA D. OVERFELT,
individually and in HIS official capacity;
TRUSTEE DIANA E. GONZALES, individually
and in her official capacity; TRUSTEE DIEGO
M. ALMARAZ JR., individually and in his
official capacity; TRUSTEE AMY N. HAYNES,
individually and in her official capacity;
TRUSTEE KENNETH SMITH, individually and
in his official capacity; AND TRUSTEE
CECILIA MARTINEZ-LOZANO, individually
and in her official capacity; GEO GROUP, INC.;
VAL VERDE CORRECTIONAL FACILITY;
and JOHN/JANE DOES 1–10,

    *Defendants.*

---

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**
*(42 U.S.C. § 1983; First, Fourth, Sixth, and Fourteenth Amendments)*

- 1 -

## I. NATURE OF THE ACTION

1.     This is a civil rights action arising from the arrest, excessive force, and prolonged unlawful detention of Plaintiff Clara McDonald, a missionary and pro-life advocate, by officers of the Del Rio Police Department acting in concert with officials of the San Felipe Del Rio Consolidated Independent School District and employees of a private prison corporation. On April 17, 2024, Plaintiff was peacefully distributing informational pamphlets about the abortion-reversal pill on a public sidewalk adjacent to Del Rio High School at 100 Memorial Drive, Del Rio, Texas —78840 — a constitutionally protected activity that officers of the Del Rio Police Department had twice previously acknowledged was lawful.

2.     Without probable cause and at the direction of school district officials who lacked any authority to suppress lawful First Amendment activity, Officer Cameron Wallace and other officers of the Del Rio Police Department physically seized Plaintiff, grabbed her wrists, twisted her arms, jerked her shoulders, threw her to the ground, handcuffed her, and forced her into a police vehicle in full view of dozens of students. Plaintiff was then transported to Val Verde Correctional Facility — a private prison operated by GEO Group, Inc. under contract with Val Verde County — where she was held for approximately 27 hours under deliberately inhumane conditions, denied access to counsel, denied access to a telephone, denied access to the courts, and subjected to repeated coercive interrogation conditioned on waiver of her constitutional rights.

3.     During her detention, Plaintiff was placed in an isolation cell reeking of human excrement, with no running water, no soap, no toilet paper, and a floor covered with contaminated water. She was given perforated sandals ensuring direct contact with that contaminated floor. Defendants repeatedly and explicitly threatened Plaintiff that she would not be allowed to see a judge or speak to an attorney unless she answered their questions. When Magistrate Hilda Lopez ultimately came to the facility, she told Plaintiff: "You never should have been here through the

night. This is a Class B misdemeanor, and it was treated like a felony." Even after Magistrate Lopez ordered Plaintiff's release, facility staff held Plaintiff in the isolation cell for an additional four hours.

4. Following her release, Plaintiff developed congestive heart failure. Two cardiologists have opined that the conditions of her confinement — specifically exposure to a highly contaminated environment laden with human waste and viral pathogens — caused or substantially contributed to the viral assault on Plaintiff's heart.

5. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiff further asserts state law claims for assault and battery and false imprisonment.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as this action arises under 42 U.S.C. § 1983 and the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in the Western District of Texas, Del Rio Division, pursuant to 28 U.S.C. § 1391(b), because all acts and omissions giving rise to this action occurred in Val Verde County, Texas, which lies within this judicial district and division.

## III. PARTIES

9. Plaintiff Clara McDonald is an individual and resident of the State of Texas. She is a missionary and pro-life advocate who, at all times relevant to this action, was engaged in

- 3 -

constitutionally protected expressive activity on a public sidewalk adjacent to Del Rio High School.

10.    Defendant City of Del Rio, Texas ("City") is a municipal corporation organized under the laws of the State of Texas. The City operates and controls the Del Rio Police Department and is responsible for the policies, customs, and practices of its law enforcement personnel. The City may be served by serving Mayor Alvaro 'Al' Arreola, City Secretary Maria Acosta, 109 W Broadway Street, Del Rio, Texas 78840.

11.    Defendant Val Verde County ("County") is a political subdivision of the State of Texas. The County contracts with GEO Group, Inc. to operate Val Verde Correctional Facility, to which Plaintiff was unlawfully transported and detained. The County is responsible for the conditions of confinement and the constitutional rights of detainees held within its contracted facilities. Defendant can be served by serving its registered agent, Generosa Ramon, Office of the County Clerk, County Courthouse, 400 Pecan Street, Del Rio, Texas 78841.

12.    Defendant San Felipe Del Rio Consolidated Independent School District ("SFDRDISD") is a public school district organized under Texas law whose administrators directed, encouraged, facilitated, and caused the unlawful arrest of Plaintiff in retaliation for her constitutionally protected activity. SFDRDISD may be served through its Superintendent, Carlos Rios. Defendant can be served by serving its registered agent, Carlos Rios, 315 Griner Street, Del Rio, Texas 78840.

13.    Defendant Officer Cameron Wallace ("Wallace") is, upon information and belief, a duly commissioned peace officer employed by the Del Rio Police Department who, at all relevant times, acted under color of state law. He is sued in his individual and official capacities. He may be served as his residence, place of employment located at 101 Lowe Drive, Del Rio, Texas 78840, or wherever he may be found.

- 4 -

14.     Defendant Officer Ana Barrera ("Barrera") is, upon information and belief, a duly commissioned peace officer employed by the Del Rio Police Department who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Barrera may be served at her residence, place of employment located at 101 Lowe Drive, Del Rio, Texas 78840, or wherever she may be found.

15.     Defendant Officer Rick Gonzalez ("Gonzalez") is, upon information and belief, a duly commissioned peace officer employed by the SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Gonzalez may be served at his residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840.

16.     Defendant Officer Lupe Costilla ("Costilla") is, upon information and belief, a duly commissioned peace officer employed by the SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Costilla may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

17.     Defendant Principal Cynthia Salas ("Salas") is, upon information and belief, a principal employed by SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Salas may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

18.     Defendant Assistant Principal DeWitt ("DeWitt") is, upon information and belief, an assistant principal employed by SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant DeWitt may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or

- 5 -

wherever she may be found.

19.    Defendant Superintendent Carlos Rios ("Rios") is, upon information and belief, the Superintendent of SFDRDISD who, at all relevant times, acted under color of state law. He is sued in his individual and official capacities. Defendant Rios may be served at his residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever he may be found.

20.    Defendant Trustee Raymond P. Meza ("Meza") is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. He is sued in her individual and official capacities. Defendant Meza may be served at his residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

21.    Defendant Trustee Joshua D. Overfelt ("Overfelt") is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. He is sued in her individual and official capacities. Defendant Overfelt may be served at his residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

22.    Defendant Trustee Diana E. Gonzales ("Gonzalez"), is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Gonzalez may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

23.    Defendant Trustee DIEGO M. ALMARAZ JR. ("Almaraz") is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. He is sued in her individual and official capacities. Defendant Almaraz may be served at his residence, place of employment located at 315 Griner Street, Del

Rio, Texas 78840, or wherever she may be found.

24. Defendant Trustee AMY N. HAYNES ("Haynes"), is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Haynes may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

25. Defendant Trustee Kenneth Smith ("Smith"), is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. He is sued in her individual and official capacities. Defendant Smith may be served at his residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

26. Defendant Trustee Cecilia Martinez-Lozano ("Martinez-Lozano") is, upon information and belief, a duly elected member of the Board of Trustees of SFDRDISD who, at all relevant times, acted under color of state law. She is sued in her individual and official capacities. Defendant Martinez-Lozano may be served at her residence, place of employment located at 315 Griner Street, Del Rio, Texas 78840, or wherever she may be found.

27. Defendant Val Verde Correction Facility ("Val Verde") is, upon information and belief, the facility where Plaintiff was held. Val Verde had a contract with GEO Group. Defendant can be served through its registered agent.

28. Defendant GEO Group, Inc. ("GEO Group") is a private for-profit corporation that operates Val Verde Correctional Facility pursuant to a contract with Val Verde County. At all relevant times, GEO Group and its employees acted under color of state law in carrying out the detention of Plaintiff. Defendant can be served by serving its registered agent, Corporate Creations Network, Inc., 2595 N. Dallas Parkway, Ste 350, Frisco, Texas 75034.

29. Defendants John/Jane Does 1–10 are presently unidentified GEO Group employees, Val Verde Correctional Facility staff members, and/or Del Rio Police Department officers who participated in the unlawful arrest, detention, and mistreatment of Plaintiff. Plaintiff will amend this Complaint to substitute the true names of these Defendants upon discovery of their identities.

## IV. STATEMENT OF FACTS

### A. Pre-Visit Legal Research — Mid-November 2023

30. Prior to her first visit to Del Rio High School, Plaintiff consulted Life Legal Defense, a public interest law firm, to verify the legality of distributing informational pamphlets on a public sidewalk adjacent to a public high school.

31. Attorney Allison Aranda of Life Legal Defense confirmed that Texas law contains no prohibition on the distribution of informational materials from a public sidewalk adjacent to a public high school. Attorney Aranda provided Plaintiff with a property map confirming that the sidewalk at Del Rio High School was public property. Attorney Aranda and Plaintiff agreed that if Plaintiff were stopped by police, Plaintiff would call Attorney Aranda, who would then speak directly with any officer on the scene.

### B. First Visit — Mid-November 2023

32. In mid-November 2023, Plaintiff visited Del Rio High School at 100 Memorial Drive, Del Rio, Texas 78840 and began distributing informational pamphlets regarding the abortion-reversal pill to students on the public sidewalk.

33. Two Del Rio police officers were on the scene. When a parent who had received a pamphlet complained, one of the officers approached Plaintiff. That officer explicitly acknowledged to Plaintiff that no law prevented her from distributing pamphlets on the public sidewalk. The officer noted that the Board of Education would not approve, but confirmed that he

could find no legal basis to stop her.

34.    Plaintiff subsequently contacted the legal department of the Del Rio Police Department and requested the citation of any law forbidding the distribution of information on a public sidewalk adjacent to a school. A legal department officer conducted a search and confirmed that no such law existed.

35.    Plaintiff also attempted to notify school administrators. She visited the principal's office; the principal declined to meet with her but indicated she would call Plaintiff back. The principal never called. When Plaintiff followed up, the principal's secretary stated the principal wanted nothing to do with the pamphlets and referred Plaintiff to the superintendent. Plaintiff called Superintendent Rios's office; his secretary stated that Rios did not make appointments and his schedule was unknown.

**C. Second Visit — April 11, 2024**

36.    On April 11, 2024, Plaintiff returned to Del Rio High School at approximately 3:25 p.m. and began distributing pamphlets to students at the corner of the public sidewalk on the street side of the school's iron gate. Approximately 25 to 30 students received pamphlets within minutes.

37.    Within minutes of Plaintiff beginning distribution, three or four police vehicles descended on Memorial Drive with sirens activated. Five or more officers exited the vehicles yelling, "Stop! You can't do that." When Plaintiff asked what she could not do, they stated she could not distribute anything. Plaintiff responded that she was standing on a public sidewalk at a public high school and that her activity was legal under Texas law.

38.    Officer Cameron Wallace confronted Plaintiff and stated that the Board of Education did not want her there and that if she kept handing out pamphlets, the police would arrest her. Plaintiff invoked her First Amendment rights and continued distributing pamphlets.

39.    Assistant Principal DeWitt  and Principal Salas stepped out of the crowd and stated

that Plaintiff could not conduct her activity, asserting — inconsistently and without legal basis — that Plaintiff was required to remain either 300 feet or 300 yards from the school. No such legal requirement existed or exists.

40.     As prearranged, Plaintiff called Attorney Aranda. Attorney Aranda spoke with Officer Barrera by telephone and explained, using the property map, that the sidewalk where Plaintiff was standing was public property. Officer Barrera refused to accept this information.

41.     Officer Barrera repeatedly attempted to maneuver Plaintiff off the public sidewalk and onto adjacent private grass, which would have exposed Plaintiff to a legitimate trespass charge. Plaintiff declined each time, understanding that stepping onto private property would constitute trespass.

42.     Defendants caused a trespass warning document to be presented to Plaintiff. The document falsely stated that Plaintiff had trespassed and had received a trespass warning. Plaintiff refused to sign the document. Officer Barrera signed the document herself.

43.     Officer Barrera stated to Plaintiff: "The only reason that you had this reaction today is that we didn't know that you were coming. Nobody knew what you were doing. They wanted to arrest you." This statement confirms that Defendants' intent on April 11, 2024 was to arrest Plaintiff for her constitutionally protected activity.

**D. Arrest — April 17, 2024**

44.     On April 17, 2024, Plaintiff returned to Del Rio High School at approximately 3:15 p.m. In anticipation of unlawful police action, Plaintiff carried her cell phone mounted on her chest, recording video to document that she walked only on public property and engaged in no unlawful conduct. Plaintiff notified associates that if she did not make contact by 5:00 p.m., she had been arrested.

45.     As Plaintiff approached the school from the far end of Memorial Drive and stepped

onto the public sidewalk in front of the school, Officer Cameron Wallace — who had been lying in wait for Plaintiff's return along with Officer Barrera and two or more additional officers — immediately stepped forward. Plaintiff began distributing pamphlets to students assembling on the sidewalk to cross the street.

46. Officer Wallace announced, "You're under arrest for illegal trespass." Plaintiff responded: "You're lying. There is no trespass and there is no law under which you can charge trespass, and you know it." The charge of "illegal trespass" was known to Officer Wallace to be without legal foundation: Plaintiff was standing on a public sidewalk, no trespass warning applicable to that sidewalk existed, and both Officer Wallace and the Del Rio Police Department's own legal department had previously confirmed that no law prohibited Plaintiff's activity in this location.

47. The school's principal stepped out of the crowd and stated that Plaintiff could not distribute pamphlets there. Plaintiff reminded the principal that she had previously attempted to contact her. Officer Wallace simultaneously attempted to grab the pamphlets from Plaintiff's hands and screamed at the surrounding students, "Don't take those pamphlets! Don't take those pamphlets!" This overt viewpoint-based suppression of the information being distributed makes plain that Defendants' actions were motivated by the content and viewpoint of Plaintiff's speech.

48. Officer Wallace then grabbed Plaintiff's left wrist. Other officers moved in. Officer Wallace grabbed Plaintiff's arms, grabbed her cell phone, jerked her shoulders while twisting her arms, dragged her toward parked vehicles, and threw her to the ground in full view of dozens of students. Plaintiff was handcuffed while prone on the ground. Plaintiff's sandals were thrown off her feet during this physical struggle; she was placed in the police vehicle barefoot, with her legs dangling out the window. Officers made no attempt to secure her safely in the vehicle.

49. Officer Gonzalez and Officer Costilla were also present and took part in Plaintiff's

- 11 -

unlawful arrest.

50.     At no point during or after the arrest were Miranda rights read to Plaintiff.

51.     Plaintiff's cell phone was seized and never voluntarily returned to her during her detention.

**E. Initial Custody and Transport to Val Verde Correctional Facility**

52.     Officers Wallace and Barrera transported Plaintiff to the Del Rio High School police substation at the end of Memorial Drive. Plaintiff was held in that office for approximately 30 to 40 minutes, during which Plaintiff requested a phone call and asked to speak to her attorney. Both requests were denied or ignored.

53.     Officers then transported Plaintiff to a parking area where a facility representative informed them there was no room and that Plaintiff would have to stay overnight. Plaintiff was left alone in the police vehicle for 20 to 30 minutes. Officers then transported Plaintiff to Val Verde Correctional Facility.

**F. Detention at Val Verde Correctional Facility**

54. Upon arrival at Val Verde Correctional Facility — a large, privately-operated prison complex under contract with Val Verde County — Plaintiff was wheeled into the facility in a wheelchair (having refused to walk) and placed in a large holding cell.

55. Plaintiff repeatedly asked to speak to her attorney. Staff ignored each request. When Plaintiff asked for a telephone to contact her attorney, staff responded that she would need to have a phone. When Plaintiff informed them they had taken her phone and demanded it be returned, they refused. At no time during Plaintiff's detention was she permitted to make a phone call or speak to counsel.

56. Staff stated openly that because Plaintiff was "not cooperating," she would be kept overnight.

57. At no time did Defendants read Plaintiff her Miranda rights.

**G. The Punishment Cell — Conditions of Confinement**

58.    During the evening of April 17, 2024, facility staff moved Plaintiff from the initial holding cell through a labyrinth of corridors and buildings deep inside the correctional facility to an isolation cell. A staff member pushed Plaintiff through the metal door from behind and slammed it shut.

59.    The conditions inside the isolation cell were deliberately inhumane and constitutionally intolerable. Specifically: (a) the cell reeked overwhelmingly of human excrement, with no ventilation or escape from the smell; (b) the only window in the cell had been completely blacked out, preventing any natural light from entering; (c) the toilet was filthy and had no running water; (d) the sink had no soap and no running water; (e) there was no toilet paper; (f) the floor was covered with a layer of filthy water contaminated with human waste; and (g) staff provided Plaintiff with plastic perforated sandals that allowed direct contact between her feet and the contaminated floor.

60.    The isolation cell contained only a small iron bed with a filthy, folded mattress. The cell was so small as to allow little room to move.

61.    Throughout the night, facility staff came to Plaintiff's cell door at repeated intervals and demanded that she answer questions, threatening that she would remain in the isolation cell indefinitely unless she complied. Staff stated explicitly: "You will stay in this cell until you answer our questions" and "You will rot in here until you answer my questions" and "You will not go before a judge until you answer our questions." These coercive statements were knowingly unconstitutional and deliberately designed to compel Plaintiff to waive her right to counsel and her right to remain silent.

62.    Staff also attempted to compel Plaintiff to submit to a physical examination against

her will, conditioning judicial access on her compliance. Plaintiff refused.

63.     Plaintiff had no access to clean water from the time of her arrest on April 17 through her release on April 18 — a period of approximately 27 hours. By the time Magistrate Lopez visited, Plaintiff was severely dehydrated.

**H. Denial of Judicial Access and Magistrate Lopez's Visit**

64.     Defendants denied Plaintiff access to judicial proceedings for more than 24 hours. Contrary to what facility staff reported to Magistrate Lopez, Plaintiff had not refused to appear before the magistrate; Plaintiff had been told repeatedly that she could not see a judge until she answered Defendants' questions.

65.     After more than 24 hours of confinement, Magistrate Hilda Lopez came to the isolation cell in person. Magistrate Lopez stated to Plaintiff: "I understand that you did not want to come before me and meet me — all I wanted to do was read you your rights." Plaintiff explained that she had been told by staff that she would not be allowed before a judge until she answered their questions. Magistrate Lopez acknowledged that this was unconstitutional.

66.     Magistrate Lopez stated to the group of facility staff present: "We all know that when anyone asks for an attorney, all questions must cease."

67.     Magistrate Lopez further stated to Plaintiff: "I don't understand this. You never should have been here through the night. This is a Class B misdemeanor and it was treated like a felony." Magistrate Lopez further stated: "I'm sure you will do what you ought to do. You should pursue everything."

68.     Magistrate Lopez ordered Plaintiff released on her own recognizance, waiving the $1,000 bond. The document Magistrate Lopez signed was inaccurate: it did not reflect that bond was waived, and it stated that Plaintiff had "appeared" before the magistrate, when in fact Plaintiff had been brought from a prison cell to a hallway outside that cell, without counsel, in a proceeding

- 14 -

with no court reporter, no oath, and no means for Plaintiff to contest a false record.

69.     Following Magistrate Lopez's departure, and despite the magistrate's order of release, facility staff returned Plaintiff to the isolation cell and held her there for an additional approximately four hours. By this time Plaintiff was overcome with fatigue and nausea.

**I. Release and Withholding of Property**

70.     Plaintiff was removed from the isolation cell at approximately 6:00 p.m. on April 18. Staff photographed and fingerprinted Plaintiff, then escorted her through the facility. At the release desk, staff initially informed Plaintiff that she would have to return the following day to retrieve her phone, wallet, identification, and shoes. Only after Plaintiff objected and invoked the magistrate's authority were her belongings, including her cell phone, returned, in a garbage bag.

71.     Plaintiff was released from Val Verde Correctional Facility at approximately 7:15 p.m. on April 18, 2024, after approximately 27 hours of unlawful confinement.

**J. Physical Injuries and Health Consequences**

72.     As a direct and proximate result of the physical force used during her arrest, Plaintiff suffered injury to her wrists, arms, and shoulders, including pain from having her wrists grabbed, arms twisted, and her body thrown to the ground.

73.     As a direct and proximate result of Plaintiff's exposure to the conditions in the isolation cell — specifically a closed environment contaminated with human feces, urine, and other pathogens, with no clean water and forced contact through perforated sandals — Plaintiff subsequently developed congestive heart failure. Two cardiologists have opined that the conditions of Plaintiff's confinement caused or substantially contributed to a viral attack on Plaintiff's heart. This outcome was entirely foreseeable: confining a person in a cell contaminated with human waste, denying her water, and ensuring physical contact with pathogens creates exactly the conditions for severe infection and systemic illness.

74.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer physical injury including congestive heart failure; past and future medical expenses; physical pain and suffering; severe emotional distress and psychological harm; loss of liberty; humiliation and reputational harm; and other compensable damages.

## V. CLAIMS FOR RELIEF

### Count I 42 U.S.C. § 1983 — First Amendment Violation (Against All Defendants)

75.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76.    The public sidewalk adjacent to Del Rio High School at 100 Memorial Drive constitutes a traditional public forum in which the protections of the First Amendment are at their zenith. The distribution of informational literature on a public sidewalk is among the most protected forms of expression under the First Amendment to the United States Constitution. See Schneider v. State, 308 U.S. 147 (1939); Lovell v. City of Griffin, 303 U.S. 444 (1938).

77.    Plaintiff's distribution of pro-life educational materials regarding the abortion-reversal pill to willing recipients on a public sidewalk constituted core protected speech and expressive conduct. No Texas law prohibited this activity, as confirmed by the Del Rio Police Department's own legal department and by Attorney Aranda's contemporaneous legal research and property analysis.

78.    Defendants arrested Plaintiff, used excessive force against her, seized her materials and cell phone, and subjected her to prolonged unlawful detention in deliberate retaliation for her exercise of First Amendment rights, and to permanently deter her from exercising those rights in the future.

79.    Defendants' viewpoint-based animus toward Plaintiff's speech is manifest: Officer Wallace physically attempted to seize the pamphlets from Plaintiff's hands and commanded

bystander students not to take them. Arrest decisions motivated in any part by the content or viewpoint of protected speech are unconstitutional. See Nieves v. Bartlett, 587 U.S. 391 (2019); Hartman v. Moore, 547 U.S. 250 (2006).

80.     Defendant DeWitt and Defendant Rios, as SFDRDISD officials, directed, encouraged, and caused Del Rio police to suppress Plaintiff's lawful First Amendment activity, making SFDRDISD and its officials liable for the resulting constitutional violations.

81.     The City of Del Rio, through the Del Rio Police Department, maintained a policy or custom of suppressing constitutionally protected speech at the behest of school district officials, or was deliberately indifferent to the need to train its officers to recognize and respect First Amendment activity in public fora, thereby giving rise to municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

82.     As a direct and proximate result of Defendants' First Amendment violations, Plaintiff suffered damages in an amount to be determined by the trier of fact.

### Count II 42 U.S.C. § 1983 — Fourth Amendment: Unlawful Arrest (Against Defendants Wallace, Barrera, City of Del Rio, and Val Verde County)

83.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84.     The Fourth Amendment guarantees individuals the right to be free from unreasonable seizure, including arrest without probable cause. A warrantless arrest must be supported by probable cause — a reasonable belief, based on articulable facts, that the person has committed or is committing a crime.

85.     Plaintiff was standing on a public sidewalk distributing lawful literature — conduct that both the Del Rio Police Department's own legal department and two responding officers on a prior occasion had explicitly confirmed was not prohibited by any law. No probable cause existed for the charge of "illegal trespass" or any other offense.

86. Officer Wallace knowingly announced a legally baseless charge. The false trespass warning signed by Officer Barrera on April 11 was itself fraudulent — created without Plaintiff's signature or consent and relating to conduct that was not trespass.

87. Plaintiff's subsequent 27-hour detention at Val Verde Correctional Facility, without proper judicial process, without timely access to a magistrate, and under conditions designed to coerce compliance, independently violated her Fourth Amendment rights.

88. As a direct and proximate result of this unlawful arrest and detention, Plaintiff suffered damages in an amount to be determined by the trier of fact.

**Count III 42 U.S.C. § 1983 — Fourth Amendment: Excessive Force (Against Defendants Wallace, Barrera, City of Del Rio, and Does 1–10)**

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. The Fourth Amendment prohibits law enforcement officers from using objectively unreasonable force in effecting a seizure. Graham v. Connor, 490 U.S. 386 (1989).

91. At the time of her arrest, Plaintiff posed no threat to the officers or any other person. She was not attempting to flee. She was not resisting arrest in any manner that would justify physical force. She was distributing pamphlets on a sidewalk to willing student recipients.

92. The force employed — grabbing Plaintiff's wrists and arms, twisting her arms at the shoulders, dragging her, throwing her to the ground, and forcing her into a police vehicle barefoot with her legs hanging out the window — was objectively unreasonable against a non-threatening, peacefully engaged individual. No reasonable officer in these circumstances would have concluded such force was necessary or proportionate.

93. Officer Wallace also attempted to physically seize Plaintiff's pamphlets — a separate act of force in furtherance of First Amendment suppression.

94. As a direct and proximate result of Defendants' use of excessive force, Plaintiff

- 18 -

suffered physical injury, pain, and other damages in an amount to be determined by the trier of fact.

### Count IV 42 U.S.C. § 1983 — Fourteenth Amendment: Conditions of Confinement (Against Defendants GEO Group, Inc., Val Verde Correctional Facility, Val Verde County, and Does 1–10)

95.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

96.     A pretrial detainee's rights under the Fourteenth Amendment's Due Process Clause are violated when she is subjected to conditions of confinement that amount to punishment. Bell v. Wolfish, 441 U.S. 520 (1979). Conditions that are deliberately imposed to coerce, punish, or inflict harm constitute unconstitutional punishment. The standard is objective unreasonableness. Kingsley v. Hendrickson, 576 U.S. 389 (2015).

97.     The conditions to which Plaintiff was subjected in the isolation cell — overwhelming smell of human excrement; no running water; no soap; no toilet paper; contaminated water covering the floor; perforated sandals ensuring physical contact with that contaminated water; blackened windows; and threats of indefinite confinement unless she submitted to interrogation — were objectively unreasonable and constituted punishment.

98.     These conditions were not the result of negligence but of deliberate choice. Staff acknowledged they were moving Plaintiff to a different cell as a consequence of her perceived non-cooperation. Staff threatened her with indefinite confinement in the punishment cell unless she answered questions. Staff refused to call this coercive campaign off even after Magistrate Lopez ordered Plaintiff's release.

99.     As a foreseeable result of these conditions — and two cardiologists have so opined — Plaintiff contracted a viral infection from the contaminated environment that caused congestive

heart failure.

100.    As a direct and proximate result of Defendants' deliberate indifference and imposition of unconstitutional conditions, Plaintiff suffered severe and permanent physical harm, emotional distress, and other damages in an amount to be determined by the trier of fact.

**Count V 42 U.S.C. § 1983 — Sixth and Fourteenth Amendments: Denial of Right to Counsel and Access to Courts (Against All Defendants)**

101.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102.    The Sixth Amendment guarantees the right to counsel in criminal proceedings. The Fourteenth Amendment's Due Process Clause guarantees the right to meaningful access to the courts and prohibits the State from conditioning constitutional rights on the waiver of other constitutional rights.

103.    From the moment of her arrest through her release approximately 27 hours later, Plaintiff repeatedly and explicitly demanded to speak with her attorney. Every such request was denied or ignored — by arresting officers in the field, by officers at the high school substation, and by staff at Val Verde Correctional Facility.

104.    Defendants at Val Verde Correctional Facility explicitly conditioned Plaintiff's access to counsel on her willingness to answer questions — a direct and knowing violation of the Fifth, Sixth, and Fourteenth Amendments. Defendants' own magistrate, upon learning of this practice, publicly stated to assembled facility staff: "We all know that when anyone asks for an attorney, all questions must cease."

105.    Defendants denied Plaintiff access to judicial proceedings for more than 24 hours. Defendants lied to Magistrate Lopez, falsely representing that Plaintiff had refused to appear before the magistrate. In fact, Plaintiff had been told she could not see a judge until she answered their questions.

106.    The informal "learning of rights" conducted by Magistrate Lopez outside Plaintiff's

cell, without counsel, without a court reporter, without an oath, and without any ability for Plaintiff to contest the record, was constitutionally deficient. The document subsequently signed did not accurately record the proceedings or the waiver of bond.

107. As a direct and proximate result of Defendants' denial of Plaintiff's right to counsel and access to courts, Plaintiff suffered loss of liberty, prolonged unconstitutional detention, physical harm, emotional distress, and other damages in an amount to be determined by the trier of fact.

**Count VI 42 U.S.C. § 1983 — Monell Municipal and Entity Liability (Against Defendants City of Del Rio, Val Verde County, SFDRDISD, and GEO Group, Inc.)**

108. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality or entity acting under color of state law is liable under § 1983 when an official policy, widespread custom, or deliberate indifference to training is the "moving force" behind a constitutional violation.

110. Defendant City of Del Rio maintained a policy or widespread custom of suppressing constitutionally protected speech at public schools at the direction of school district officials, without independent legal review of the underlying basis for suppression. Alternatively, the City failed to train its officers to recognize and respect First Amendment activity in traditional public fora, including public sidewalks adjacent to public schools, despite the obvious need for such training. The record of multiple officers — across two separate incidents — erroneously asserting the right to suppress lawful pamphlet distribution demonstrates that any such training failure was the moving force behind Plaintiff's constitutional injuries.

111. Defendant SFDRDISD maintained a policy or custom of directing police to suppress speech by private individuals near SFDRDISD schools without any lawful basis, and of

coordinating with police to effect arrests of individuals engaged in protected expression. SFDRDISD officials, including DeWitt and Rios, were the driving force behind the police action taken against Plaintiff on both April 11 and April 17, 2024.

112.    Defendant Val Verde County, through its contract with GEO Group for operation of Val Verde Correctional Facility, bears responsibility for the conditions of confinement and the constitutional rights of detainees held in that facility. The County was deliberately indifferent to the obvious need to ensure that pre-trial detainees in its contracted facility would have access to counsel, access to the courts, and constitutionally adequate conditions of confinement.

113.    Defendant GEO Group, Inc. maintained policies or widespread customs of: conditioning detainee access to counsel and judicial process on submission to interrogation; placing non-compliant detainees in punitive isolation cells with deliberately degraded conditions; and denying detainees their personal property upon release. These policies or customs were the moving force behind Plaintiff's constitutional injuries during her detention.

**Count VII State Law — Assault and Battery (Against Defendants Wallace, Barrera, and Does 1–10, and City of Del Rio to the Extent Immunity Is Waived or Inapplicable)**

114.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

115.    Under Texas law, assault is the intentional or knowing infliction of bodily injury on another person. Battery is the unlawful, intentional application of force to the person of another without consent.

116.    Defendants Wallace, Barrera, and Does 1–10 intentionally and without legal justification grabbed Plaintiff's wrists and arms, twisted her arms at the shoulders, dragged her, and threw her to the ground, causing physical injury. No circumstances existed that would justify the application of any physical force to a peaceful, non-resisting individual standing on a public sidewalk engaged in constitutionally protected activity. The individual officer Defendants are

- 22 -

personally liable for assault and battery. Plaintiff preserves these claims against the City of Del Rio to the extent that governmental immunity is waived or inapplicable, or to the extent the individual Defendants acted outside the scope of their lawful authority.

117.    As a direct and proximate result of Defendants' assault and battery, Plaintiff suffered physical injury, pain, and other compensable damages.

**Count VIII State Law — False Imprisonment / False Arrest (Against Defendants Wallace, Barrera, GEO Group, Val Verde County, and Does 1–10, and City of Del Rio and Val Verde County to the Extent Immunity Is Waived or Inapplicable)**

118.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

119.    Under Texas law, false imprisonment is the willful detention of a person without legal justification. Where the detention is effected by law enforcement officers without probable cause, it also constitutes false arrest.

120.    Plaintiff was arrested without probable cause, transported across the city, and held for approximately 27 hours at a private correctional facility without legal justification. The charge of "illegal trespass" was groundless; Plaintiff was at all times on public property engaged in lawful activity. No valid warrant existed. No lawful basis for detention existed.

121.    Plaintiff was aware of her confinement at all times and did not consent to it.

122.    The individual officer Defendants and GEO Group employees are liable for false imprisonment. Plaintiff preserves these claims against the City of Del Rio and Val Verde County to the extent that governmental immunity is waived, or to the extent Defendants acted outside the scope of their lawful authority.

123.    As a direct and proximate result of her unlawful arrest and prolonged detention, Plaintiff suffered loss of liberty, physical harm including congestive heart failure, emotional

- 23 -

distress, humiliation, and other compensable damages.

## VI. DAMAGES

124.   As a direct and proximate result of all Defendants' unconstitutional and unlawful conduct, Plaintiff has suffered and continues to suffer:

    a.   Physical injury, pain, and suffering, including injury to her wrists, arms, and shoulders sustained during the arrest;

    b.   Congestive heart failure caused or substantially contributed to by the conditions of her confinement;

    c.   Past and future medical expenses;

    d.   Mental anguish, emotional distress, and psychological harm;

    e.   Loss of liberty and freedom for approximately 27 hours;

    f.   Humiliation, embarrassment, and reputational harm;

    g.   Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

    h.   All other damages allowed by law.

125.   Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights, entitling Plaintiff to punitive damages against the individual Defendants in their individual capacities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clara McDonald respectfully prays that this Court:

a.  Enter a declaratory judgment that Defendants' actions violated Plaintiff's rights under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution;

b.  Enter injunctive relief prohibiting Defendants from interfering with constitutionally protected First Amendment activity on public sidewalks adjacent to Del Rio High School and other public schools within the City of Del Rio;

c.  Enter judgment in Plaintiff's favor and against all Defendants on all counts;

d.  Award Plaintiff compensatory damages in an amount to be proven at trial;

e.  Award Plaintiff punitive damages against the individual Defendants in their individual capacities in an amount sufficient to punish their conduct and deter future violations;

f.  Award Plaintiff her reasonable attorneys' fees and costs of litigation pursuant to 42 U.S.C. § 1988 and any other applicable provision;

g.  Award pre- and post-judgment interest as permitted by law; and

h.  Award such other and further relief as the Court deems just and proper.

Dated: April 17, 2026

Respectfully submitted,

**JOHNSEN LAW PLLC**

By: */s/ Angelle M. Adams*
  Angelle M. Adams
  Texas Bar No. 24055081
  angelle@johnsenlaw.com
  Christopher Johnsen
  Texas Bar No. 24072169
  chris@johnsenlaw.com
  1849 Kingwood Drive, Suite 105
  Kingwood, Texas 77339
  Telephone: (832) 786-8646

**COUNSEL FOR PLAINTIFF**